**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**JOHNNY LEE,**                                                                                       **PETITIONER**

**v.**                                                       **No. 2:06CV75-P-A**

**STATE OF MISSISSIPPI, ET AL.**                                                     **RESPONDENTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* petition of Johnny Lee for a writ of *habeas corpus* under 28 U.S.C. § 2254. The state has answered; the petitioner has replied. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* shall be dismissed with prejudice.

**Facts and Procedural Posture**

The petitioner was convicted by a jury in the Circuit Court of Coahoma County, Mississippi, of attempted rape (Count One), statutory rape (Count Two), and attempted rape (Count Three). He was sentenced to ten years on Count One, life on Count Two, and ten years on Count Three, the sentences to be served concurrently in the custody of the Mississippi Department of Corrections. He is currently housed at the Marshall County Correctional Facility in Holly Springs, Mississippi. State Court Record, hereinafter S.C.R., Vol. 1, pg. 34.

The petitioner appealed his convictions and sentences to the Mississippi Court of Appeals, assigning as error (as stated by the petitioner):

> A. The trial court erred in failing to sustain the Defendant's motion for a judgment notwithstanding the verdict or in the alternative, a motion for new trial based upon the failure of the state to prove venue in the case.

> B. The trial court erred in failing to sustain the Defendant's
> motion for a judgment notwithstanding the verdict or in the
> alternative, a motion for a new trial due to the prosecution
> improper comment during closing arguments, whereby the
> Defendant was referred to as a "sophisticated criminal."
>
> C. The trial court erred in failing to sustain the Defendant's motion for a
> judgment notwithstanding the verdict or in the alternative, a motion for a new trial
> as the weight of the evidence did not support the jury's verdict.

The Mississippi Court of Appeals affirmed the conviction and sentence on March 22, 2005. *Lee v. State*, 910 So.2d 1123 (Miss. App. 2005) (Cause No. 2003-KA-02523-COA). The petitioner did not file a motion for rehearing; nor did he seek a writ of *certiorari* to the Mississippi Supreme Court challenging this decision.

He then filed a petition for post-conviction collateral relief ("PCR") in the Mississippi Supreme Court, assigning as error (as stated by the petitioner):

> A. That the Petitioner's was wrongfully convicted.
>
> B. That the Petitioner's actual innocence.
>
> C. That the Petitioner's being unlawfully held in custody.
>
> D. Ineffective assistance of counsel, failure to call Petitioner's exculpatory
> witness, Wanda Wilson to testify in Petitioner favor.
>
> E. Victim (Symphony Wilson), recanted and committed perjury under oath.
>
> F. The Coahoma County Sheriff Dept., disregard for the truth and without
> probable cause for an arrest of this petitioner the first time and the second time.

The Mississippi Supreme Court denied the petitioner's request for post-conviction relief November 2, 2005.

In the instant petition, Lee raises the following grounds (set forth verbatim below as stated by the petitioner):

**Ground One:** That Petitioner's was wrongfully convicted.

**Ground Two:** That the Petitioner's actual innocence.

**Ground Three:** That the Petitioner's being unlawfully held in custody.

**Ground Four:** Ineffective Assistance of Counsel, failure to call Petitioner's exculpatory witness; Wanda Wilson to testify in Petitioner favor.

**Ground Five:** Victim (Symphony Wilson), recanted and committed a perjury under oath.

**Ground Six:** That the Coahoma County Sheriff Dept., disregard for the truth and without probable cause for an arrest of this petitioner the first time and the second time.

**Ground Seven:** That Petitioner Lee being denied the equal protection of the law.

**Ground Eight:** That the prosecution improper comment during closing argument influence the jury's verdict and prejudicially the Petitioner substantial rights.

## Ground Eight: Not Exhausted

The petitioner did not exhaust his claim in Ground Eight in state court. He raised the claim on direct appeal; however, after the Mississippi Court of Appeals affirmed his conviction, he never sought rehearing. As such, he abandoned his right to seek a writ of *certiorari* to the Mississippi Supreme Court, and he did not raise this claim during his pursuit of state post-conviction relief. A state prisoner must present his claims to the state supreme court in a petition for discretionary review when such review is part of the state's ordinary appellate procedure. *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 67 USLW 3682 (1999). The petitioner did not seek rehearing (or a petition for writ of *certiorari* in the Mississippi Supreme Court); as such, he has failed to exhaust his state court remedies. He can no longer exhaust Ground Eight of the instant petition because the time for seeking rehearing in the Mississippi Court of Appeals has long passed. MISS. R. APP. P. 40 and MISS. R. APP. P. 17(b). Therefore, Johnny Lee's claims in

Ground Eight of the instant petition are procedurally barred and shall be dismissed with prejudice. *O'Sullivan*, 119 S.Ct. at 1734 (citing *Coleman v. Thompson,* 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Federal courts cannot review state post-conviction claims dismissed under an independent and adequate state procedural rule – unless the petitioner can demonstrate cause for his default and actual prejudice from it. *Coleman,* 501 U.S. at 750; *Martin v. Maxey,* 98 F.3d 844, 849 (5th Cir. 1996) (citations omitted). Though the petitioner claims that his failure to seek rehearing in the Mississippi Court of Appeals was due to his attorney's error, he has not shown "cause" under the "cause and prejudice" test necessary to allow a federal court to reach the merits of his claims despite the procedural bar. This is because no external impediment existed to prevent him from raising and discussing these claims as a ground for relief in a request for an out-of-time rehearing in state court. *United States v. Flores,* 981 F.2d 231 (5th Cir. 1993); *Hill v. Black,* 932 F.2d 369 (5th Cir. 1991).

The petitioner claims that although the decision by Court of Appeals affirming his conviction was issued on March 22, 2005, his attorney failed to inform him of the decision until months later. The petitioner's mail log shows that during his time at Parchman, he indeed received only one piece of legal mail, a letter from his attorney David Tisdell received on May 23, 2005. This letter was forwarded to the Tallahatchie County Correctional Facility in Tutwiler, Mississippi, where the petitioner was housed from May 16, 2005 until November 2, 2005. The petitioner did not receive any legal mail during the fourteen-day period following the court's decision. The log does not, however, show whether the petitioner received word of the decision by other means. No matter when the petitioner learned of the court's decision, he was still

required at least to *attempt* to exhaust his claims through the state appellate process. The petitioner could have filed a motion for an out-of-time rehearing – giving himself the opportunity to explain the reasons for his delay – and giving the Mississippi state courts a fair opportunity to rule on his claim. Instead, the petitioner took no action at all. The court finds that the petitioner's failure to pursue his state court remedies to conclusion constitutes procedural default of his claims in Ground Eight. The petitioner thus has not established cause for his failure to seek rehearing. As such, the court need not consider whether the petitioner suffered actual prejudice. *Martin v. Maxey,* 98 F.3d 844, 849 (5th Cir. 1996).

This court's decision to apply the procedural bar will not result in a "fundamental miscarriage of justice" because the petitioner has not shown that, "as a factual matter, [] he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)). He has not presented new, reliable evidence that was not presented at trial proving that "more likely than not [] no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted). The petitioner alleges that he is actually innocent of the crimes for which he was convicted. The evidence presented at trial, however, proves otherwise, as discussed in detail below. For these reasons, the petitioner's claim in Ground Eight shall be dismissed with prejudice as procedurally defaulted.

**All Grounds Decided on the Merits in State Court**

The Mississippi Supreme Court has already considered Grounds One through Eight on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless

they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As

discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to Grounds One through Eight of the instant petition.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

### Ground One: Insufficiency of the Evidence; Ground Two: Actual Innocence; Ground Three: Wrongful Conviction

In Ground One, the petitioner argues that the verdict was against the overwhelming weight of the evidence against him. In Ground Two, he argues that he is actually innocent of the crimes of rape and statutory rape. In Ground Three, the petitioner argues that he is being unlawfully held in custody because he is innocent and was unlawfully convicted. He bases these three arguments on the affidavit of the victim's cousin, Wanda Wilson. According to the affidavit, when the victim, Symphony Wilson, told Wanda that she had been sexually abused, Symphony named several perpetrators – but not the petitioner Johnny Lee (her step-grandfather). The petitioner claims that this document proves his innocence – and thus that he was wrongfully

convicted. He also argues that the lack of physical evidence tying him to these crimes shows that an impartial jury would not have convicted him. These arguments, taken together, challenge the sufficiency of the evidence used to convict the petitioner. Such a challenge can support a claim for federal *habeas corpus* relief – if the evidence, when viewed in the light most favorable to the prosecution, is such that no reasonable fact finder "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Marler v. Blackburn*, 777 F.2d 1007, 1011 (5th Cir. 1985). This high standard "preserves the integrity of the trier of fact as the weigher of the evidence." *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983). Indeed, a jury may find the evidence sufficient to support a conviction even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992).

The petitioner's argument simply ignores the wealth of evidence introduced against him at trial. First, Wanda Wilson's claim that Symphony identified other men as the perpetrators does not negate the evidence that the petitioner also raped her. Indeed, Symphony herself took the stand and identified the petitioner (her grandfather) as the man who had raped her:

> Q: Let's talk about July 5, 2002. Can you tell the jury what happened on that day?
>
> A: Well, I was on my way to my grandmother's house. We – my grandaddy is Johnny Lee, and he sat parked – drove his truck around some trees in a corn field, and uhmm, he got out of the truck and came on the passenger side, and he opened the door and he started hugging me, and he started going in my pants, and he would try to have sex with me. And I kept pushing him off me, and I was just struggling to get him off me. And I started to cry, and then he just stopped.

S.C.R., Vol. 2, pg. 26.

> A: I was on my way to my grandmother's house with my grandfather, Johnny Lee. And he drove his truck down a dirt road. I think it was a cotton field, and he went by, like a bush, and he had sex with me.

S.C.R., Vol. 2, pg. 27.

> A: Uh, he was fixing to take me to Pizza Hut, since it was my birthday, and he went on the road like – and it was like a hill, and it was raining, and it was dark, and it wasn't no traffic, and he stopped on the side of the road, and he started putting his hands in my pants. And I kept telling him that I didn't want him to do that to me, and uhm, he just kept putting his hands in my pants, and I was crying, and I was pushing him off me, and he just stopped.

S.C.R., Vol. 2, pg 28.

In addition to Symphony's testimony, the jury also heard from Lisa Phelps (Symphony's Child Therapist), her grandmother, Mae Ella Lee (the petitioner's wife), and the examining physician, Dr. Richard Waller.

During the following exchange, Lisa Phelps testified that she was convinced of Symphony's truthfulness :

> Q: Was there ever a doubt in your mind that she was telling you the truth about this?
>
> A: Not a doubt.
>
> Q: And what kinds of things flag a professional like yourself that this might be sexual abuse, that what she's saying is true?
>
> A: The different opportunities that she's given to talk about the abuse. During that time, if a child is not telling the truth – and I have worked with kids who were not telling the truth before, too, the – their presentation, the content of what they are saying, it comes out almost coached, if you will. They say the same thing, the exact same way every single time. And to be quite honest, children really, they tell lies to get out of trouble, not to get into trouble. And I have yet to work with a child who has been sexually abused who disclosed the abuse who had wonderful consequences because they told. The same thing here. You know, Symphony has talked about on occasions of how there's been some family dissension because of what she came out and said in order to protect herself.

S.C.R., Vol. 2, pp. 76-77.

On cross-examination, Phelps went on to say that she also believed Symphony's allegation that Lee was the perpetrator:

> Q: Yes. For instance, there's no doubt in your mind that she was abused?
>
> A: Right.
>
> Q: Is there any doubt in your mind would have been the abuser or who the abuser is or was?
>
> A: Based on her testimony – I mean, her testimony. Based on her disclosure, and based on our counseling sessions and the number of times we talked about these incidents, she had nothing to gain by lying about who she had said that the perpetrator was. So, no, there's no doubt.

S.C.R., Vol. 2, pg. 82.

In addition Mae Ella Lee (the petitioner's wife) testified that she asked Symphony about possible sexual abuse, and Symphony told her that Johnny Lee had raped her. S.C.R., Vol. 2, pp. 52-65. Symphony said that the petitioner always made the same statement before each incident, "[I]t's only going to take a minute." S.C.R., Vol. 2, pg. 57-58. That was the same thing the petitioner told his wife Mae Ella whenever she refused sex. When Symphony told her this, Mae Ella Lee was convinced that her husband Johnny Lee had abused the girl. *Id*. The examining physician Dr. Waller also testified to Symphony's accusation,

> Q: Who did she say penetrated her?
>
> A: Johnny Lee.

S.C.R., Vol. 2, pg. 22.

Symphony's own testimony, as well as the corroborating testimony of her grandmother, doctor, and therapist, provided more than sufficient evidence that the petitioner raped his step-

-10-

granddaughter. Further, the affidavit of Wanda Wilson offers no newly discovered evidence. The petitioner himself admits that this information was available to counsel at trial but was not used. The statement does not even contradict the testimony presented at trial. Symphony Wilson had been abused by more than one perpetrator. Dr. Irene Buckner testified that Symphony tested positive for Trichomonas, a sexually transmitted disease, in May of 2002, one month before the petitioner's first attempt to rape Symphony. S.C.R., Vol. 2, pg. 52. Phelps also testified that Symphony was abused by other men on separate occasions:

> A: There are other incidences of alleged child sexual abuse.
>
> Q: Alleged sexual abuse?
>
> A: Yes.
>
> Q: Do you know whether or not Mr. Lee was accused of those acts, as well?
>
> A: He was not, to my knowledge.

S.C.R., Vol. 2, pg. 91.

This evidence was presented to the jury, and the jury concluded that the petitioner had sexually assaulted Symphony Wilson. In fact, Phelps testified:

> A: Uh, that was the beginning part of her history in terms of alleged child sexual abuse by her stepfather then. Which is not uncommon in children who have been sexually abused, the family dynamics, the way the family system works, it's almost the children – I cannot tell you of all the two hundred children that I've ever treated over a course of time how many different perpetrators have gotten to these kids. The incidences that we're talking about right now are based on what Symphony told me from when she was around 11 until her birthday of last year, I believe. Somewhere around in there. I don't have my notes in front of me. And with those incidents in particular –
>
> Q: Yes.
>
> A: – is where she indicates that she was sexually abused by Johnny Lee, her grandmother's husband.

S.C.R., Vol. 2, pp. 91-92. Given the evidence presented at trial, the jury could reasonably conclude that the petitioner was one of several men to sexually assaulted Symphony Wilson.

The petitioner also argues that no physical evidence – particularly DNA – ties him to the crime. Symphony testified that after the rape, the petitioner told her to take a bath – and she did so. S.C.R., Vol. 2, pg. 28. The examining physician, Dr. Richard Waller, explained the lack of DNA evidence:

> Q: Now, did you find any sperm or DNA or blood that would link the defendant to the victim?
>
> A: Uh, no I didn't. When they brought the child in, the allegation was this had happened. And I told Sandra Horn (sic), who was with Human Services, "Look, I can tell you if this child has been penetrated. But if we're talking about anything over a 48 hour window, there won't be anything there. There will be no sperm there. There wil
>
> Q: Right.
>
> A: It's a factor of time. Time degrades everything there. When you get past 48 hours, you'll find nothing. If the person showers, if the person douches and this type of thing, it's even quicker.

S.C.R., Vol. 2, pg. 21-22.

The Mississippi Court of Appeals considered this argument on direct appeal and, in a unanimous opinion, held,

> The evidence offered by the State to prove its case consisted of at least the following: the sworn and uncontradicted testimony of the victim, the sworn testimony of Lee's wife, who corroborated the victim's testimony, the expert opinion of a qualified physician who examined the victim and corroborated her testimony, and the expert opinion of a qualified psychologist who examined the victim and corroborated her testimony. Accepting this evidence as true and viewing this evidence in the light most favorable to the verdict, we can not say that the verdict was contrary to the overwhelming weight of evidence. On the contrary, given our review of the record, this evidence leads us to conclude that the verdict is supported by the weight of the evidence. Therefore, we find this issue to be without merit.

*Lee v. State*, at 1129.

During post-conviction review, the Mississippi Supreme Court considered this argument and found it to be without merit. These decisions were reasonable in fact and in law. Therefore, the petitioner's claims in Grounds One, Two, and Three shall be dismissed with prejudice.

## Ground Four: Ineffective Assistance of Counsel

In Ground Four, the petitioner claims that his counsel was ineffective for failing to call an exculpatory witness, Wanda Wilson. To merit habeas corpus relief on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-prong test: (1) constitutionally deficient performance by counsel, and (2) actual prejudice as a result of the deficiency. *Strickland v. Washington*, 466 U.S. 668 (1984). Failure to establish either prong of the test merits rejection of his claim. *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998).

Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. A federal court must analyze counsel's actions in light of the often murky circumstances existing at the time of representation – not with the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). There is a strong presumption that counsel has exercised reasonable professional judgment. *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813, 187 (5th Cir. 1986).

To prove prejudice, Petitioner must demonstrate that the result of the proceedings would have been different – or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.), *cert. denied*, 116 S.Ct. 557 (1995). Counsel's performance is considered deficient if "it falls below an objective

-13-

standard of reasonableness" as measured by professional norms. *Strickland*, 466 U.S. at 688. The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).

The jury considered evidence that Symphony Wilson had been sexually abused by other perpetrators – as well as Lee. Wanda Wilson's testimony would have been, at best, superfluous. A sound trial strategy would be to avoid evidence of additional sexual abuse because it would make Symphony Wilson an even more sympathetic victim – and would thus tend to inflame the jury against the petitioner. In addition, the evidence would not exculpate the petitioner. Finally, the petitioner cannot show that he was prejudiced by the omission of this testimony because the jury considered evidence that there were multiple abusers – and chose to believe that the petitioner also abused his granddaughter. The court finds it unlikely that introduction of Wanda Wilson's testimony would have changed the jury's decision.

The Mississippi Supreme Court considered this argument on post-conviction review and found "[a]fter due consideration, the panel finds that Lee's claims that he received constitutionally ineffective assistance of counsel fail to meet both prongs of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984)." This decision is reasonable in fact and in law. As such, the petitioner's claims in Ground Four shall be dismissed with prejudice.

### Ground Five: Actual Innocence

In Ground Five, the petitioner claims that the victim, Symphony Wilson, recanted her accusation and also committed perjury at trial. According to Lee, this proves his innocence and, as such, his entitlement to federal *habeas corpus* relief. This claim is wholly without merit. Once again, the petitioner bases this claim on the affidavit of Wanda Wilson, which asserts that

in July of 2002, Symphony Wilson had accused other men of sexually abusing her. Under the petitioner's interpretation of events, Symphony Wilson "recanted" this earlier statement when she later accused the petitioner of three acts of sexual abuse.

This interpretation is simply irrational in light of the record. Symphony Wilson did not recant her earlier statements. As discussed above, the evidence proved that she was indeed victimized by other perpetrators, as well as the petitioner. Her later disclosure of the additional sexual abuse she suffered at the hands of the petitioner is not a denial of the other abuse. Symphony did not accuse Lee in the statements she allegedly made to Wanda Wilson. This is understandable because the two were discussing the confrontation of a another attacker. Indeed, Symphony Wilson has never denied that the petitioner abused her as well. Put simply, the characterization of Symphony's later accusation against the petitioner as "recanting" her statement is absurd. For this reason, it is equally absurd to claim that Symphony Wilson committed perjury on the stand. The weight of the evidence supports her allegations. The Mississippi Supreme Court considered this claim on postconviction review and found it to be without merit. This ruling is reasonable in fact and in law. As such, the petitioner's claims in Ground Five shall be dismissed with prejudice.

### Ground Six: Arrest Without Probable Cause

In Ground Six, the petitioner claims that the Coahoma County Sheriff's Department showed disregard for the truth when they arrested him twice without probable cause. The petitioner argues that the lack of physical evidence tying him to the crime, such as DNA, indicates that the sheriff's department did not have probable cause to arrest him for these crimes. The petitioner argues that the warrant authorizing his arrest was thus constitutionally deficient.

"[T]he right to be free from arrest without probable cause is a clearly established constitutional right ." *Mangieri v. Clifton,* 29 F.3d 1012, 1015 (5th Cir.1994). If the police had probable cause to arrest the petitioner on any charge, then probable cause existed for the arrest:

> The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead, we focus on the validity of the arrest. If there was probable cause for any of the charges made-here either [attempted rape or statutory rape]-then the *arrest* was supported by probable cause, and the claim for false arrest fails.

*Wells v. Bonner*, 45 F. 3d 90, 95 (5th Cir. 1995). "Whether an officer had probable cause depends on whether, at the time of the arrest, the "facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the arrested] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). "Even if there was not probable cause to arrest the plaintiff for the crime charged, proof of probable cause to arrest the plaintiff for a related offense is also a defense." *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir.1990).

The warrant served by the Coahoma County Sheriff's Department followed an investigation of Symphony's allegations. In this case, the Coahoma County Sheriff's Department was acting in response to an allegation of rape made by Symphony Wilson. After hearing Symphony's accusation, the Sheriff's Department conducted an investigation, as evidenced by the Investigative Report the petitioner attached to his request for state post-conviction relief as Exhibit Z-1. Investigator Napoleon Brewer reviewed Symphony's medical records, which showed that her hymenal ring had been violated. He also interviewed Symphony and obtained her statement as to what had occurred. At that point, Symphony showed Brewer the locations

where the petitioner had attempted to rape her – and had actually raped her. Brewer photographed the areas she identified. Based on this information, Brewer swore out an affidavit, which was presented to the Coahoma County Justice Court. At that point, the Justice Court Judge signed a warrant for the petitioner's arrest. The information was reasonable trustworthy, and a prudent man would believe that the petitioner had committed an offense; as such, probable cause existed for the petitioner's arrest. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). As such, the Coahoma County Sheriff's Department had probable cause to arrest Johnny Lee for the crimes of attempted rape and rape. The Mississippi Supreme Court considered this claim on post-conviction review and held "that Lee's claims regarding his arrest by the Coahoma County Sheriff's Department . . . are without merit." This decision was reasonable in fact and in law. Therefore, the court shall deny *habeas corpus* relief in Ground Six.

**Ground Seven: Denial of Equal Protection Under the Law**

The petitioner argues in Ground Seven that he has been denied his right to equal protection under the law because in an allegedly similar case, the defendant was granted a new trial. In *Wall v. State*, 820 So. 2d 758 (Miss. 2002), the defendant was convicted of the attempted rape and sexual battery of a young girl. After trial, Wall discovered that his neighbor would testify that he did not hear noise from Wall's apartment that night – in direct contradiction to the victim's story. Wall also learned that the victim had told her cousin that she had lied when she accused Wall of the crimes. In light of this new evidence, the Mississippi Supreme Court reversed Wall's conviction and remanded his case for a new trial. The petitioner claims that his case is analogous to *Wall* because he too has a statement from the victim's cousin and, as such,

he is entitled to similar treatment. Unlike the new evidence in *Wall*, however, the affidavit of Wanda Wilson does not assert that the victim Symphony lied when she accused the petitioner. Instead, it merely states that others perpetrated separate acts of sexual abuse upon her. Thus, the instant case is distinct from *Wall*.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), *citing Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). The petitioner is not similarly situated to the defendant in *Wall,* and as a result, his equal protection claim must be dismissed.

The state court's ruling on the petitioner's claims in Ground Seven are reasonable in fact and in law. As such, this ground shall be dismissed with prejudice.

### Ground Eight: Improper Statements During Closing Argument

The petitioner alleges in Ground Eight that the prosecutor made an improper statement during closing arguments by referring to the petitioner as a "sophisticated criminal." The petitioner argues that this statement was improper because there was nothing in the record to indicate that he had prior criminal convictions.

"[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 1044 (1985). The court must examine three

factors to determine whether improper comments by a prosecutor require reversal: (1) the magnitude of the statement's prejudice; (2) the effect of any cautionary instructions given; and (3) the strength of the evidence supporting the conviction. *United States v. Wise*, 221 F.3d 140, 153 (5th Cir. 2000); *United States v. Palmer*, 37 F.3d 1080, 1085 (5th Cir. 1994).

The statement in question was:

> This – this really – this kind of case and this kind of person, Johnny Lee, scares folks. Why? Because he is a sophisticated criminal. He – he's shrewd.

S.C.R., Vol. 2, pg. 121. Defense counsel objected to the statement, arguing that use of the word "criminal" was improper when there was no evidence of record that the petitioner had been convicted of a crime. *Id*. Although the trial court did not explicitly rule on the objection, the judge implicitly sustained the objection by saying, "Let's rephrase it and move on." S.C.R., Vol. 2, pg. 122. The prosecution's characterization of the petitioner as a criminal during closing argument was minimally prejudicial in light of the substantial evidence introduced at trial to support the proposition. Defense counsel's contemporaneous objection was noted by the judge, and the prosecutor was admonished to rephrase the statement. Whatever small prejudice the defendant may have suffered was mitigated by the objection and the court's correction. Even if the prosecution had never used the word "criminal," the strength of the state's case all but assured a conviction. Hence, characterizing the petitioner as a criminal during closing argument does not warrant a reversal of his conviction.

The Mississippi Court of Appeals considered this argument and found it to be without merit. The court held that Johnny Lee had failed to properly preserve this objection for appeal by not insisting on an explicit ruling from the trial court and held:

> With that said, however, we do note, in conclusion, that the particular statement at issue does not strike us as a statement that caused serious or irreparable damage to Lee's case. Far more damaging to Lee's case was the actual evidence put on by the State, and we cannot say that this passing comment made in closing argument (which comment was addressed by the trial judge at least in some fashion and not subsequently repeated by the prosecution) so prejudiced Lee as to warrant a new trial. Therefore, we find this issue to be without merit.

*Lee v. State*, at 1128. The state court's ruling was reasonable in fact and in law, and the petitioner's claims in Ground Eight shall be dismissed with prejudice.

In sum, all of the petitioner's grounds for relief are without merit, and the instant petitioner for a writ of *habeas corpus* shall be dismissed with prejudice. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 13th day of July, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE